## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

LANCE JOHANSEN and
MISSISSIPPI ORTHOPEDIC
INSTITUTE, PLLC                                                    PLAINTIFFS

v.                                                    CAUSE NO. 1:23CV6-LG-BWR

PHILIP MYERS; SINGING
RIVER HEALTH SYSTEM.
and JOHN DOES 1–10                                                 DEFENDANTS

## MEMORANDUM OPINION AND ORDER CONCERNING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Lance Johansen and Defendant Philip Myers are orthopedic

surgeons.  Dr. Johansen operates his practice under the name Mississippi

Orthopedic Institute, PLLC ("MOI").  Dr. Myers began working for MOI in August

2019.  After several disputes arose between Dr. Johansen and Dr. Myers, but before

the Employment Agreement expired, Singing River Health System ("SRHS") hired

Dr. Myers to open a competing orthopedic surgery clinic in the same building where

MOI operated.  Dr. Johansen and MOI sued for damages that allegedly arose from

SRHS's employment of Dr. Myers.  Plaintiffs further claim that SRHS wrongfully

failed to consider Dr. Johansen's application for appointment and clinical privileges

to practice medicine at its hospital.  Dr. Myers has also filed counterclaims against

Plaintiffs.  Dr. Myers and SRHS have filed a [82] Motion for Summary Judgment,

which has been fully briefed by the parties.  Plaintiffs have filed a [84] Motion for

Partial Summary Judgment, which is opposed by Dr. Myers.  After reviewing the

submissions of the parties, the record in this matter, and the applicable law, the Court finds that both Motions should be granted in part and denied in part for the reasons set forth below.[1]

## BACKGROUND

Dr. Myers entered into an Employment Agreement with Dr. Johansen's business, MOI, in April 2019, and he began working for MOI as an orthopedic surgeon in August 2019. At that time, Dr. Johansen had privileges to practice medicine at Garden Park Hospital, which was owned by HCA Healthcare. Dr. Myers and Garden Park entered into a Recruiting Agreement in which Dr. Myers agreed to "maintain medical staff membership and privileges at [Garden Park] Hospital in good standing . . . for at least forty-eight (48) months." Ex. 3 to Defs.' Mot. [82-3] at 3. Garden Park also gave Dr. Myers a $100,000 sign-on bonus, which Dr. Myers agreed to put in a joint account owned by MOI. In early 2020, Dr. Myers sent Dr. Johansen a letter claiming that the sign-on bonus had been misappropriated, that MOI had failed to pay him for "call coverage," and that rent had been improperly deducted from his paychecks.

"Effective October 1, 2020, SRHS formally acquired Garden Park Hospital from HCA and renamed the hospital 'Singing River Gulfport.'" Def.'s Memo. [83] at

---

[1] The Court has conducted an independent jurisdictional inquiry and determined that it has jurisdiction over this case pursuant to 28 U.S.C. § 1331. *See Riley v. Bondi*, 145 S. Ct. 2190, 2201 (2025)(holding that even if the parties fail to spot a jurisdictional issue or agree that the court has jurisdiction, the court cannot proceed unless it makes an independent determination that it has jurisdiction).

6. Dr. Johansen and other Garden Park physicians "were grandfathered onto the Medical Staff" at Singing River Gulfport when it acquired Garden Park. Ex. 12 to Defs.' Mot. [82-12] at 1. However, Garden Park physicians were advised that they "would have to go through the full credentialing process if [they] wanted to remain on the Medical Staff." *Id.*

On the same day that SRHS acquired Garden Park, Dr. Myers notified Plaintiffs by letter that Plaintiffs' "continuing and material breaches of the Employment Agreement have left [him] no choice other than to terminate [his] employment under such agreement and seek employment elsewhere." Ex. 7 to Defs.' Mot. [82-8]. He stated that he would comply with the Employment Agreement's requirement of ninety days' advance written notice of termination. After receipt of the ninety-day notice, Plaintiffs allegedly refused to continue paying Dr. Myers, so he stopped working for MOI on October 9, 2020.

"In mid-to-late October 2020, SRHS opened an orthopedic clinic with Dr. Myers at the helm and in the Bayou Bernard office building where MOI was located." Defs.' Mem. [83] at 7. In April 2021, Dr. Johansen filed an application for appointment and clinical privileges to practice medicine at Singing River Gulfport. On May 4, 2021, SRHS notified Dr. Johansen that it would begin "undertaking [a] full credentialing review which [would] include an evaluation of [his] 'current competence, character, ethics, and other qualifications' to determine whether [he satisfied] its standards to be a member of the Medical Staff [at Singing River Gulfport] with clinical privileges." Ex. 12 to Defs.' Mot. [82-12] at 1. SRHS

requested information and releases from Dr. Johansen so that it could conduct this evaluation. Dr. Johansen signed the releases. It is unclear from the record whether Dr. Johansen submitted additional information in response to this request.

SRHS notified Dr. Johansen by letter dated October 26, 2021, that "a number of significant concerns have been raised relating to [his] qualifications for appointment and clinical privileges," and it requested additional information from Dr. Johansen. Ex. 14 to Defs.' Mot. [82-14] at 1. Dr. Johansen responded to this request on December 23, 2021, and he met with SRHS's Credentials Committee on January 11, 2022. After that meeting, SRHS notified Dr. Johansen by letter that his application was still incomplete, and it cautioned him that "no further action [would] be taken until [he provides] the information requested . . . and fully resolve[s] the questions and doubts that have been raised." *Id.* It imposed a February 18, 2022, deadline for Dr. Johansen to "fully, completely, and accurately" respond to its request. Dr. Johansen responded to SRHS's request by letter dated February 18, 2022.

In March 2022, someone anonymously provided SRHS with a multidisciplinary evaluation of Dr. Johansen that had been performed by Acumen Assessments in February 2020. SRHS took the position that Dr. Johansen should have voluntarily provided the Acumen evaluation to SRHS during the application and credentialing process. It asked Dr. Johansen to sign a release so that it could "communicate directly with Acumen" in order to learn "why [Dr. Johansen] obtained the evaluation, the results of the evaluation, and [Acumen's findings and

-4-

recommendations]." Ex. 23 to Defs.' Mot. [82-23] at 1. Dr. Johansen refused to sign the release because he believed SRHS did not have the right to obtain his "personal medical information" that is protected by HIPAA. Ex. 1 to Defs.' Mot. [82-1] at 41.

SRHS's Credentials Committee determined that Dr. Johansen's application was incomplete because he did not sign the Acumen-related release. On April 21, 2022, SRHS notified Dr. Johansen that it had decided not to process his application, so his Medical Staff appointment and clinical privileges to practice at Singing River Gulfport would expire on April 27, 2022. Oschner Health, the owner of the Bayou Bernard office building, required Plaintiffs to move out of the office building because the lease required Dr. Johansen to be part of the active medical staff of Singing River Gulfport.

Plaintiffs originally filed this lawsuit against Dr. Myers, SRHS, and several of MOI's former employees[2] in the Circuit Court of Harrison County, Mississippi, First Judicial District. All of the defendants removed the case to this Court, and Plaintiffs filed an [29] Amended Complaint. Defendants filed a [3] Motion to Dismiss Plaintiffs' state law claims. The Court granted Defendants' Motion and permitted Plaintiffs to amend their Complaint.

In their [44] Second Amended Complaint, Plaintiffs assert the following claims against both Dr. Myers and SRHS: procedural due process, substantive due process, First Amendment retaliation, and tortious interference with business

---

[2] On January 26, 2024, the parties filed a [54] Stipulation dismissing Plaintiffs' claims against MOI's other former employees, thus leaving Dr. Myers and SRHS as the only remaining defendants.

relations. They assert a Fifth Amendment Takings Claim and a tortious interference with contract claim against SRHS. Finally, they state the following claims against Dr. Myers: breach of contract, willful and tortious breach of contract, breach of the duty of good faith and fair dealing, breach of fiduciary duty and duty of loyalty, slander/defamation, unfair competition, and conversion. Defendants seek summary judgment on all of Plaintiffs' claims.

Dr. Myers filed the following counterclaims against Plaintiffs when he filed his [5] Answer to the original [1-2] Complaint: breach of contract, tortious breach of contract, unjust enrichment, Fair Labor Standards Act, breach of the covenant of good faith and bad dealing, and conversion. Plaintiffs seek summary judgment on Dr. Myers' FLSA claim against both Plaintiffs as well as his state law claims against Dr. Johansen.

## DISCUSSION

A motion for summary judgment may be filed by any party asserting that there is no genuine issue of material fact, and that the movant is entitled to prevail as a matter of law on any claim. Fed. R. Civ. P. 56. The movant bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response. If the movant does, however, meet this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that

there is a genuine issue for trial." *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001).

## I. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. PLAINTIFFS' FEDERAL CLAIMS

Section 1983 provides a cause of action against any person who deprives another "of any rights, privileges, or immunities secured by the Constitution and laws" while acting "under color of" state law.  42 U.S.C. § 1983.  The parties agree that SRHS is a state actor pursuant to Section 1983.[3]

#### 1. Plaintiffs' Abandoned Claims

Plaintiffs have not responded to Defendants' request for summary judgment as to their First Amendment retaliation claim and their Fifth Amendment Takings claim.  Therefore, those claims are deemed abandoned.  *See Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 459 (5th Cir. 2022) ("A plaintiff abandons claims when it fails to address the claims or oppose a motion challenging those claims.").

#### 2. Plaintiffs' Section 1983 Due Process Claims

##### a. Healthcare Quality Improvement Act Of 1986 (HCQIA)

Defendants assert that Plaintiffs' Section 1983 claims are barred by HCQIA,

---

[3] Defendants assert that Dr. Myers cannot be held liable for Plaintiffs' federal claims because he is not a state actor.  Defendants did not provide any analysis or caselaw to support this argument, so the Court will not address it.  *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) ("Mere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment.").

a statute that was enacted due to Congress's concerns about "[t]he increasing occurrence of medical malpractice and the need to improve the quality of medical care." *Poliner v. Tex. Health Sys.*, 537 F.3d 368, 376 (5th Cir. 2008) (quoting 42 U.S.C. § 11101(1), (2)).  HCQIA grants "limited immunity from suits for money damages to participants in peer review actions, thereby encouraging doctors who would otherwise fear the threat of litigation to participate in effective professional peer review procedures."  *Brader v. Allegheny Gen. Hosp.*, 167 F.3d 832, 839 (3d Cir. 1999) (citing 42 U.S.C. §§ 11101(4)–(5)).

HCQIA does not apply "to damages under any law of the United States or any State relating to the civil rights of any person or persons, including the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq. and the Civil Rights Acts, 42 U.S.C. 1981, et seq."  42 U.S.C. § 11111(a)(1).  Therefore, the statute does not provide immunity for Plaintiffs' claims filed pursuant to 42 U.S.C. § 1983.[4]  *See Austin v. McNamara*, 979 F.2d 728, 733 (9th Cir. 1992); *see also Rogers v. Columbia/HCA of Cent. La., Inc.*, 971 F. Supp. 229, 237 (W.D. La.1997) ("HCQIA immunity does not shield the defendants from liability for violating the United States Constitution.").

### b.  Miss. Code Ann. § 41-63-5

Defendants argue that Plaintiffs' federal claims should be dismissed pursuant to a Mississippi statute that provides hospitals with immunity for a medical review committee's action or recommendation as long as the committee

---

[4] Defendants have not argued that HCQIA provides immunity for Plaintiffs' state law claims.

acted without malice and reasonably believed that the action or recommendation was "warranted by the facts known . . . at the time of such action or recommendation." Miss. Code Ann. § 41-63-5. The United States Supreme Court has explained, "Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized by state law." *Martinez v. State of Cal.*, 444 U.S. 277, 284 n.8 (1980); *see also Howlett By & Through Howlett v. Rose*, 496 U.S. 356, 375 (1990) ("The elements of, and the defenses to, a federal cause of action are defined by federal law."). As a result, this statute does not provide immunity for Plaintiffs' federal claims.[5]

### 3. Plaintiffs' Procedural Due Process Claim

"The Fourteenth Amendment's Due Process Clause protects against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Adams v. City of Harahan,* 95 F.4th 908, 913 (5th Cir. 2024) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). A plaintiff must demonstrate: "(1) the deprivation of a protected property or liberty interest, and (2) that the deprivation occurred without due process of law." *Id.*

Defendants have not argued that Plaintiffs lacked a liberty or property interest in Dr. Johansen's privileges to practice medicine at Singing River Gulfport.[6]

---

[5] Defendants have not argued that Miss. Code Ann. § 41-63-5 provides immunity for Plaintiffs' state law claims.

[6] Defendants argue that "nothing was 'taken' from either Dr. Johansen or MOI" because he has been able to obtain credentials and practice medicine at another

Therefore, the Court will assume, for the purposes of the pending Motion only, that Plaintiffs were deprived of a protected property or liberty interest.

"In the context of public employment, [constitutional due process] requires some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Greene v. Greenwood Pub. Sch. Dist.*, 890 F.3d 240, 242 (5th Cir. 2018) (citation modified). "[T]he formality and procedural requisites for [a constitutionally-adequate pre-termination hearing] can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Id.* "At a minimum, however, an employee facing termination must be given 'notice and an opportunity to respond' before the termination takes effect." *Id.*

> A satisfactory pretermination "hearing" need not be elaborate, for such a hearing is merely designed to prevent the employer from making a mistake. The purpose of the hearing is simply to ensure that the charges raised against the employee are true and support his or her dismissal. Thus, an informal hearing which allows the employee to give his version of the facts sufficiently hedges against an erroneous dismissal and likewise satisfies the requirements of due process.

*Browning v. City of Odessa*, 990 F.2d 842, 844 (5th Cir. 1993) (internal citations omitted). However, the "existence of post-termination procedures is relevant to the necessary scope of pretermination procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547 n.12 (1985). "In the event of minimal pretermination

---

hospital in Biloxi, Mississippi. Defs.' Mem. [83] at 12. This argument appears to relate to Plaintiffs' abandoned Takings claim. If Defendants intended to assert that Plaintiffs' due process claims should be dismissed on this basis, they have not cited any caselaw that supports this argument.

safeguards, the substantial private interest one has in not being deprived of his livelihood requires a full hearing after termination." *Schaper v. City of Huntsville*, 813 F.2d 709, 716 (5th Cir. 1987); *Strickland v. Wilkie*, 105 F.4th 285, 295 (5th Cir. 2024) ("Pretermination notice and an opportunity to respond is required to satisfy due process, but an employee's pretermination due process rights are limited where post-termination process is available.").

Defendants argue that "Dr. Johansen was given substantial opportunity to cure any deficiencies [in his application for privileges] and to provide information during the SRHS credentialing process," but he refused to provide all of the information that SRHS requested. Mem. [83] at 12. Defendants claim this refusal is "fatal" to Plaintiffs' due process claims, but they have not cited any cases that support this assertion. *Id.* In addition, Defendants have not addressed whether "constitutionally-adequate pre-deprivation procedures were readily available" to Dr. Johansen, *see Greene*, 890 F.3d at 242, or discussed the sufficiency of the process they provided. As a result, Defendants' arguments are waived. *See JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831 F.3d 597, 601 (5th Cir. 2016) ("To avoid waiver, a party must identify relevant legal standards and any relevant Fifth Circuit cases."); *United States v. Brown*, 819 F.3d 800, 829 (6th Cir. 2016) ("[I]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."). Defendants have not met their initial burden of demonstrating they are entitled to summary judgment as to Plaintiffs' procedural due process claim. *See Littlefield*, 268 F.3d at 282 ("If the moving party

fails to meet [its] initial burden, the motion must be denied, regardless of the nonmovant's response.").  Plaintiffs' procedural due process claim shall remain pending.

### 4.  Plaintiffs' Substantive Due Process Claim

Defendants have not discussed Plaintiffs' substantive due process claim or cited any authority concerning substantive due process.  They discuss procedural due process and then generally assert that Plaintiff's "due process . . . claims" should be dismissed.  Defs'. Mem. [83] at 15.  Plaintiffs' substantive due process claim shall therefore remain pending.

### B.  PLAINTIFFS' STATE LAW CLAIMS

Plaintiffs concede that Defendants are entitled to summary judgment as to their conversion, defamation, and breach of fiduciary duty claims.  They continue to assert the following state law claims: breach of contract, tortious breach of contract, tortious interference with contract/unfair competition, and breach of the duty of good faith and fair dealing.  Defendants argue that Plaintiffs' state law contract claims should be dismissed because Plaintiffs breached Dr. Myers' Employment Agreement, thus rendering it null and void.  However, Defendants have not identified the terms of the Employment Agreement that Plaintiffs allegedly breached.  It is not the Court's responsibility to review the Agreement in order to find clauses that support Defendants' arguments.  *See United States v. del Carpio Frescas*, 932 F.3d 324, 331 (5th Cir. 2019) ("Judges are not like pigs, hunting for truffles buried in the record.").

As for Plaintiffs' tortious interference/unfair competition claim, Defendants

assert:

> With respect to the claims against SRHS that it interfered with the contract between Dr. Myers and MOI, it is clear from the record that Dr. Myers sought the opportunity with SRHS after the professional relationship between Dr. Myers and Dr. Johansen deteriorated, and after Dr. Myers set forth his concerns to Dr. Johansen that the terms of the Employment Agreement were not being followed. Moreover, and as a practical matter, the Employment Agreement between Dr. Myers and MOI expired on August 31, 2020.

Defs.' Mem. [83] at 16–17.[7]  Defendants have not identified the evidence or

testimony that supports these assertions.  As a result, Defendants have not met

their initial burden of demonstrating they are entitled to summary judgment as to

Plaintiffs' state law claims.

## II.  PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Dr. Myers claims that Plaintiffs misappropriated his sign-on bonus and

payments for additional call duties he performed.  In addition, he alleges that

Plaintiffs improperly charged him rent and failed to pay his salary.  He has sued

Plaintiffs for breach of contract, tortious breach of contract, violation of the FLSA,

unjust enrichment, breach of the covenant of good faith and bad dealing, and

conversion.  Dr. Myers agrees to dismiss his FLSA claim.  Plaintiffs have filed a [84]

---

[7] The Employment Agreement provides, "The term of this Agreement shall be for a period of one (1) year commencing on the Commencement Date, and continuing until August 31st, 2020 . . . , subject . . . to prior termination." Ex. 2 to Defs'. Mot. [82-2] at 5.  The Agreement was automatically renewed "for successive periods of one (1) year each" unless "otherwise terminated as set forth" in the Employment Agreement. *Id.*  Dr. Myers left his employment with MOI on October 9, 2020.  Ex. 8 to Defs.' Mot. [82-8] at 1.

Motion for Partial Summary Judgment as to all of Dr. Myers' remaining claims against Dr. Johansen.

Plaintiffs claim that Dr. Johansen is entitled to summary judgment because "Mississippi follows the general rule that individual liability of corporate officers or directors may not be predicated merely on their connection to the corporation but must have as their foundation individual wrongdoing." *See Aldridge v. Aldridge*, 168 So. 3d 1127, 1140 (¶47) (Miss. Ct. App. 2014). Plaintiffs also rely on the following Mississippi statute that pertains to LLCs like MOI:

> [N]o member, manager or officer of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company *solely by reason of being a member, acting as a manager or acting as an officer of the limited liability company*.

Miss. Code Ann. § 79-29-311(1) (emphasis added). They argue:

> Because all alleged actions of Dr. Johansen have been done and made on behalf of the LLC, all claims against Dr. Johansen individually must be dismissed. Dr. Myers has not pled, nor have any facts been adduced to show that Dr. Johansen did anything for his alleged personal gain, as opposed to actions taken on behalf of and for the benefit of the MOI.

Pls.' Mem. [85] at 3.

Dr. Myers counters that Dr. Johansen can be held personally liable without piercing the corporate veil because he directly participated in the actions alleged by Dr. Myers. He cites deposition testimony that indicates Dr. Johansen was personally involved in the decisions and actions that are the subject of Dr. Myers' claims. *See* Ex. 4 to Defs.' Resp. [87-4] at 103–04, 110–11, 113–14, 131, 136–37.

-14-

Under Mississippi law, "if an individual member of an LLC participates in a tort, then the individual can be sued in spite of not piercing the corporate veil." *Lancaster v. Miller*, 319 So. 3d 1174, 1183 (Miss. Ct. App. 2021).

> A director, officer, or agent is liable for the torts of the corporation or of other directors, officers, or agents when, and only when, he has participated in the tortious act, or has authorized or directed it, or has acted in his own behalf, or has had any knowledge of, or given any consent to, the act or transaction, or has acquiesced in it when he either knew or by the exercise of reasonable care should have known of it and should have objected and taken steps to prevent it. What is required is some showing of direct personal involvement by the corporate officer in some decision or action which is causally related to plaintiff's injury.

*Aldridge*, 168 So. 3d at 1141 (emphasis omitted); *see also Whitaker v. Limeco Corp.*, 32 So. 3d 429, 439 (¶31) (Miss. 2010) ("[W]hen a corporate officer directly participates in or authorizes the commission of a tort, even on behalf of the corporation, he may be held personally liable."). However, this doctrine only applies to tort claims, not simple breach of contract claims. *Blumer v. Majestic Homes, LLC*, 411 So. 3d 251, 261 (Miss. Ct. App. 2025).

Based on Dr. Johansen's deposition testimony, a genuine issue of material fact exists regarding whether Dr. Johansen can be held personally liable for Dr. Myers' tortious breach of contract, unjust enrichment, breach of the covenant of good faith and bad dealing,[8] and conversion claims. However, Dr. Johansen is entitled to summary judgment as to Dr. Myers' breach of contract claim because he was not a party to the Employment Agreement. *See Blumer*, 411 So. 3d at 258, 261.

---

[8] Breach of the duty of good faith and fair dealing is a tort under Mississippi law. *Lippincott v. Miss. Bureau of Narcotics*, 856 So. 2d 465, 468 (Miss. Ct. App. 2003).

## CONCLUSION

Defendants are entitled to summary judgment as to Plaintiffs' conversion, defamation, breach of fiduciary duty, First Amendment retaliation claim, and Fifth Amendment Takings claims. Plaintiffs are entitled to summary judgment as to Dr. Myers' FLSA claim. Finally, Dr. Johansen is entitled to summary judgment as to Dr. Myers' breach of contract claim.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [82] Motion for Summary Judgment filed by Singing River Health System and Dr. Philip Myers is **GRANTED IN PART AND DENIED IN PART**. Plaintiffs' conversion, defamation, breach of fiduciary duty, First Amendment retaliation, and Fifth Amendment Takings claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the [84] Motion for Partial Summary Judgment filed by Dr. Lance Johansen and Mississippi Orthopedic Institute, PLLC, is **GRANTED IN PART AND DENIED IN PART**. Dr. Myers' FLSA claims against Dr. Lance Johansen and Mississippi Orthopedic Institute, PLLC, and his breach of contract claim against Dr. Johansen are **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED** this the 28th day of August, 2025.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE